UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal Case No.  13-031 (ESH) |
| v. | : | Sentencing Hearing: January 17, 2014 |
| BENJAMIN B. GREY | : | |

## GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING

The United States of America by and through its attorney, the United States Attorney for the District of Columbia, submits this supplemental memorandum in aid of sentencing in response to the Court's request on December 17, 2013.

### Defendant's Prior Sentence in Maryland

The defendant's prior conviction for Theft of $10,000 to under $100,000 in Montgomery County, Maryland in 2010 (Case No. 0D00249732) for which he was sentenced to 10 years, 9 of which were suspended, should be counted as two criminal history points in the defendant's criminal history calculation.  *See* U.S.S.G. §§ 4A1.1(b), 4A1.2(a)(1).

The plain language of the Guidelines makes clear that the conviction does count as a "prior sentence."  The guidelines define sentences to be counted broadly, to include "any sentence." Specifically, the guidelines provide that "[t]he term "prior sentence" means <u>any sentence previously imposed upon adjudication of guilt</u>, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1) (emphasis added).  The guidelines further note that "<u>[p]rior sentences under appeal are counted</u> except as expressly provided below.  In the case of a prior sentence, the execution of which has been stayed

1

pending appeal, § 4A1.1(a), (b), (c), (d), and (e) shall apply as if the execution of such sentence had not been stayed." U.S.S.G. § 4A1.2(l) (emphasis added). In short, the plain language and intent of the Guidelines is that "all sentences" be counted, even those "stayed pending appeal" unless "expressly provided below." Defendant makes no argument that he qualifies for any exception "expressly provided below," and the government is aware of none that applies.

Instead, defendant attempts to contend that the plain language of the guidelines does not apply because his Maryland appeal, as an appeal for a trial de novo, somehow escapes the plain terms of the guidelines. But this argument has been heard and rejected. The district court's well-reasoned decision in *United States v. Greene*, 148 F.Supp.2d 626 (E.D. Va. 2001), involved the same circumstances presented here, that is, the issue of whether, in a two-tiered state system, a prior sentence from a conviction after a bench trial should be counted even though, at the time of sentencing, the defendant had appealed that conviction *de novo* jury trial. *Id.* The court rejected the defendant's arguments that the sentence should not be counted, and counted the defendant's prior conviction as two points. *Id.* at 628-30. For the same reasons cited by the district court in *Greene*, the defendant's prior conviction should be counted as two points. *See also United States v. Byars*, 5 F.3d 1496, 1993 WL 391647 (5th Cir. 1993) ("While the appeal of [defendant's] municipal court convictions to the county court stayed the sentences, the stay does not eliminate those sentences for purposes of calculating [his] criminal history category. Prior sentences clearly include sentences under appeal, and the Guidelines make no exception for cases that may be tried de novo.").

The government recognizes that, as discussed by the Fourth Circuit in *United States v. Martin*, 378 F.3d 353 (4th Cir. 2004), the defendant's claim may turn on whether the prior

2

sentence was "automatically nullified for most purposes" under state law. *Id.* at 356. Under *Martin*'s reasoning, if a prior sentence was nullified by the appeal and "totally stayed," it should be counted as one point under §U.S.S.G § 4A1.1(c); if it was not, it should count as two points under § 4A1.1(b). *Id.* at 359. Thus, even the reasoning in *Martin* depended upon the automatic nullification effect of an appeal under North Carolina state law.

However, even assuming this Court adopted the reasoning in *Martin* (and Fourth Circuit precedent does not bind this Court), the defendant fails to articulate a basis on which the Maryland prior sentence should be viewed as "totally stayed" by his appeal.

Under Maryland law, whether an appeal from a Maryland (state) District Court conviction stays a sentence is not automatic – it is discretionary. Section 12-401 of the Maryland Criminal Code governs the defendant's right to appeal de novo from a bench trial before the District Court, which states only that: "in a criminal appeal that is tried de novo:. . . (2) On the filing of a notice of appeal, the circuit court <u>may</u> stay a sentence of imprisonment imposed by the District Court and release the defendant pending trial in the circuit court." (emphasis added). Thus, there is no automatic stay under Maryland law, and thus – even under Martin – Maryland (state) District Court convictions are not "automatically nullified for most purposes" pending an appeal.

That is particularly evident here, because in this case, the defendant has produced no evidence – and the government is aware of none – that the defendant's sentence from the Maryland trial court was stayed. Instead, based on conversations with the Maryland Attorney General's office and their review of court records, the defendant was detained at the time he was sentenced and began serving his sentence. Only upon the defendant's filing of his appeal from that determination (a fact that is not in dispute) and the defendant's posting an appeal bond, was the

3

defendant subsequently released pending his appeal for a trial de novo in the Maryland (state) Circuit Court. But prior to his release, the defendant in fact began serving a portion of this sentence in this prior case. Moreover, the government has received no indication that any court stayed, whether in whole or in part, the execution of his sentence.

Accordingly, because the prior sentence had not been totally stayed, and the prior sentence was to a term of incarceration greater than 60 days, it should be counted as two points under U.S.S.G. § 4A1.1(b).

### Two-Level Adjustment for Defendant's Managerial Role

The PSR found that the defendant "directed the activities of at least two individuals . . . in the instant offense, specifically, 'cousin John' and an unnamed assistant" (identified at trial as Babita Reis). PSR ¶ 81. Thus, the PSR found the defendant merited a two-level increase in his offense level under U.S.S.G. § 3B1.1(c). This adjustment is well-supported by the facts at trial (and found in the PSR) and the relevant law.

**Factual Background.** The facts underlying this adjustment are clear. As H.W. testified, and as the PSR found, "cousin John" and Babita Reis both played key roles in the defendant's scheme to defraud:

> On April 2, 2009, Benjamin Grey and an associate, identified as Mr. Grey's "cousin John," drove with [H.W.] from Washington, DC to the automobile auction lot of Manheim, Inc. in Manheim, PA. While at the Manheim lot, Benjamin Grey warned [H.W.] to not approach the auction area. Mr. Grey's "cousin John" accompanied [H.W.] and ensured that [H.W.] did not approach or observe the auction area. Mr. Grey went to the auction area by himself, returned, and told [H.W.] he had won the auction and purchased a specific BMW 750 (identified by VIN number) for [H.W.]. However, Manheim records demonstrate that Benjamin Grey never purchased the specific BMW 750. Instead, it was sold to someone else.

4

>That same day, Benjamin Grey, "cousin John," and [H.W.] returned to Benjamin Grey's apartment in Washington, DC  Mr. Grey had his female administrative assistant complete a "buyer's order" form purporting to document [H.W.'s] purchase of the BMW 750 from Benjamin Grey and Planet Cars.  ([J.B.], another victim, also testified that Mr. Grey had a female assistant, Babita Reis, for his business.)

PSR ¶¶ 17-18.

At trial, H.W. also testified about the role "cousin John" and Babita Reis played in continuing the scheme after defendant had obtained the car loan check.  Specifically, when H.W. went to the defendant's apartment to try to confront him about the scheme, "cousin John" and Babita Reis met him and made excuses for the defendant's failure to produce the car the defendant claimed to have purchased.  Likewise, Government Exhibit 3 (printouts of H.W.'s text messages) included similar messages to H.W. from a person identifying themselves as John using the defendant's phone number, which likewise made excuses for the defendant's fraud.  As stated therein [sic]: "this john just got ben's phone from the jail they gave him 30 day's on Monday for violating probation . . ."   The next message stated [sic], "whatever problem you have with ben i would advise you to take it up in the court of law.  He doesn't take stuff like this litely."

At trial, J.B. also testified that the defendant used Babita Reis as an assistant for his purported business, Planet Cars, which business the evidence at trial established was a sham front for his fraudulent schemes.

Further, W.E. (the college student who was defrauded of $1,500), also described "cousin John" participating in the scheme.  As W.E. testified, and as the PSR found, the day the defendant directed W.E. to give him a $1,000 check purportedly to buy a car, a person identifying themselves as "cousin John" came to W.E.'s apartment and picked up the check.  *See* PSR ¶ 64.

In short, the facts make clear that "cousin John" repeatedly assisted the defendant by variously obtaining payments for non-existent cars (from W.E.), by distracting H.W. from realizing that the defendant was not in fact making a purchase in the Manheim auction area, and by discouraging H.W. from pursuing the defendant after the fraud was discovered. Both H.W. and J.B. also testified that Babita Reis worked for the defendant by completing paperwork for the phony sales of non-existent cars.

It is clear, then, that "cousin John" and Babita Reis both worked within the scheme at defendant's direction. Moreover, based on the repeated nature of their involvement, it is reasonable for the Court to infer that both were participants in the defendant's scheme.

**Legal Authority.** The Guidelines provide for a two-level adjustment "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in" other parts of the guidelines – i.e., more extensive leader or supervisor roles meriting even greater role adjustments. U.S.S.G. § 3B1.1(c).

To merit the adjustment, it is sufficient that the defendant "have been the organizer, leader, manager, or supervisor of one or more other participants." *Id.*, application note 2. "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." *Id.*, application note 1. "[T]he 'offense' includes the offense charged as well as 'the underlying activities and participants that directly brought about the more limited sphere of the elements of the specific charged offense.' This would include persons who are used to facilitate the criminal scheme." *United States v. Inigo*, 925 F.2d 641, 659 (3d Cir. 1991) (citation omitted). Thus, participants include even those acquitted of the offense. *See, e.g., United States v. Al-Sadawi*, 432 F.3d 419 (2d Cir. 2005). And participants can include those

6

described as "victims" of the offense.  *See, e.g., United States v. Messervey*, 317 F.3d 457, 464 (5th Cir. 2002).  Indeed, in *Inigo*, the Court broadly defined "participants," including as a "participant" an individual who allowed his home to be used to "distract" victims.  925 F.2d at 660.  *See also id*. at 659-60 ("participants" include even those individuals as to whom the court found the evidence insufficient to support a conviction).

Under this definition of "participant," the evidence ample supports the Court finding, by a preponderance of the evidence, that this adjustment is warranted here.  *See, e.g., United States v. Blalock*, 571 F.3d 1282, 1285 (D.C. Cir. 2009).

                                          Respectfully submitted,

                                          RONALD C. MACHEN JR.
                                          United States Attorney
                                          D.C. Bar No. 447889


                                          By: _____/s/_____
                                          Jonathan P. Hooks
                                          Christopher Kavanaugh
                                          Assistant United States Attorneys
                                          Fraud and Public Corruption Section
                                          555 4th Street, N.W.
                                          Washington, DC   20530
                                          (202) 252-6731; (202) 252-6977
                                          Jonathan.Hooks@usdoj.gov
                                          Christopher.Kavanaugh@usdoj.gov

Dated: January 7, 2014